# United States District Court
# District of Massachusetts

JAMES BERBERIAN,
     Plaintiff,

     v.                         CIVIL ACTION NO. 2012-10247-RBC[1]

TOWN OF ANDOVER,
     Defendant.

## MEMORANDUM AND ORDER
## ON THE TOWN OF ANDOVER'S
## MOTION TO DISMISS FOR LACK OF
## SUBJECT-MATTER JURISDICTION (#4)

COLLINGS, U.S.M.J.

### I. Introduction

On February 8, 2012, plaintiff James Berberian ("Berberian") filed a five-count complaint (#1) against the Town of Andover (the "Town").  The claims in the complaint arise out of the Town's alleged "unpermitted discharges of

---

[1]
     With the parties' consent, this case has been assigned to the undersigned for all purposes, including trial and the entry of judgment, pursuant to 28 U.S.C. § 636(c).

sediment, sludge, and pollutants into the waters of the United States." (#1 ¶ 1) Count I is a federal claim for violation of the Clean Water Act, specifically violation of the National Pollution Discharge Elimination System ("NPDES") permit regulations as well as unpermitted discharge of pollutants.   The remaining claims are all founded on state law: Count II is a claim for violation of the Massachusetts Wetlands Protection Act; Count III is a claim for negligence; Count IV is a claim for trespass to real property; and Count V is a claim for nuisance.

In lieu of answering the complaint, the Town has filed a motion to dismiss for lack of subject matter jurisdiction (#4) together with a memorandum of law and two affidavits with attached exhibits. (##6, 7, 8, 10, 11[2])  Berberian, in turn, has filed an opposition to the motion to dismiss with an attached affidavit. (#15)  With leave having been given, the defendant filed a reply memorandum with an additional attachment. (#20)  On April 12, 2012, oral argument on the dispositive motion was heard and the matter was taken under advisement.  At this juncture, the motion to dismiss stands ready for decision.

## II. The Facts

---

[2]

Docket ## 7, 8, 10 and 11 are all the same affidavit, but with different exhibits appended thereto.

According to the allegations of the complaint, Berberian owns property ("the Property") on Bancroft Street in the Town. (#1 ¶ 6)  A drinking water supply tank maintained by the Town is also located on Bancroft Street. (#1 ¶ 8)  It is alleged that "[t]he Town routinely cleans this tank by pumping precipitate and silt-laden water out of the tank into catch basins on Bancroft Road." (#1 ¶ 9)  The tank overflow is also said to be tied into the catch basin system and "routinely discharg[es] material into waterways and protected wetlands resource areas on the Property."[3] (#1 ¶ 10)  The tank overflow connection to the catch basin system is alleged not to be permitted. (#1 ¶ 10)

From November 10th through 12th, 2010, the Town cleaned the drinking water supply tank on Bancroft Road. (#1 ¶¶ 11, 12)  While doing so, the Town caused precipitate and silt-laden water to be pumped out of the tank and discharged into the catch basins on Bancroft Road. (#1 ¶ 13)  In turn the precipitate and silt-laden water was discharged from the catch basins "into waterways and protected wetlands resource areas on the Property." (#1 ¶ 13)  The Town did not possess the requisite permit issued under either the NPDES

---

[3]

The waterways on the Property drain into a tributary of the Shawsheen River which then flows into the Merrimack River. (#1 ¶ 35)  Consequently, the waterways on the Property are alleged to be "waters of the United States" subject to protection under the Clean Water Act. (#1 ¶ 36)

or the Massachusetts Wetlands Protection Act that would allow such discharges into waterways and wetlands. (#1 ¶ 15)   Indeed, the discharges were determined to have been unpermitted by the Town of Andover's Conservation Commission. (#1 ¶ 16)

The Town tested the discharged sediment and sludge that had migrated onto the Property and found high levels of iron and manganese. (#1 ¶ 19)  In short order after the discharges, on November 23, 2010, the Town of Andover Conservation Commission issued an Enforcement Order to the Town of Andover Department of Public Works Water Division mandating remediation as well as the development of a protocol to avert such discharges in the future. (#1 ¶ 20) While the Town undertook a partial clean-up of the discharged materials the following day, sedimentation and sludge is alleged to have remained on the Property[4]. (#1 ¶ 21)

The minutes of the Town of Andover Conservation Commission meeting in January of 2011 reflect that the Town of Andover Department of Public Works assumed responsibility for the discharge of sedimentation from the water tank. (#1 ¶ 24)   Because no action had been taken to move forward on

---

[4]

Berberian had the sludge and sedimentation on the Property tested in December, 2010 and April, 2011, and in both instances high levels of iron and manganese were detected. (#1 ¶¶ 23, 25)

4

remedial steps, in May, 2011, the Town of Andover Conservation Commission issued an Enforcement Order to the Town of Andover Department of Public Works Water Division. (#1 ¶ 26)  The May Enforcement Order was superceded by an Enforcement Order issued on June 27, 2011 which required the Town of Andover Department of Public Works Water Division to undertake further testing of the sedimentation discharged and to develop a more extensive remediation plan.[5] (#1 ¶ 28)

The Town tested the discharged sedimentation for iron and manganese in July of 2011, but at that time "refused to test for thirteen Priority Pollutant Metals that are regulated by the Massachusetts Contingency Plan ("MCP") and are subject to regulatory limits." (#1 ¶ 29)  Testing undertaken by Berberian's expert revealed arsenic, cadmium, chromium, nickel and lead in the discharged sedimentation on the Property. (#1 ¶¶ 31, 32)

### III. The Applicable Law

Pursuant to Rule 12(b)(1), Fed. R. Civ. P., a defendant may move to dismiss an action based on lack of federal subject matter jurisdiction.  Because federal courts are considered courts of limited jurisdiction, "[t]he existence of

---

[5]

Berberian claims that the terms of the Enforcement Order did not afford him the opportunity either to comment on, or participate in the development of, the proposed remediation plan. (#1 ¶ 28)

subject-matter jurisdiction 'is never presumed.'" *Fafel v. Dipaola*, 399 F.3d 403, 410 (1 Cir., 2005)(quoting *Viqueira v. First Bank,* 140 F.3d 12, 16 (1 Cir., 1998)).  Rather, "'the party invoking the jurisdiction of a federal court carries the burden of proving its existence.'" *Murphy v. United States,* 45 F.3d 520, 522 (1 Cir.), *cert. denied,* 515 U.S. 1144 (1995) (quoting *Taber Partners, I v. Merit Builders, Inc.,* 987 F.2d 57, 60 (1 Cir.), *cert. denied,* 510 U.S. 823 (1993)); *Johansen v. U.S.*, 506 F.3d 65, 68 (1 Cir., 2007).  Once a defendant challenges the jurisdictional basis for a claim under Rule 12(b)(1), the plaintiff bears the burden of proving jurisdiction. *Thomson v. Gaskill,* 315 U.S. 442, 446 (1942); *Johansen*, 506 F.3d at 68.

In ruling on a motion to dismiss for lack of jurisdiction, it is incumbent upon the court to "'credit the plaintiff's well-pled factual allegations and draw all reasonable inferences in the plaintiff's favor.'" *Sanchez ex rel. D.R.-S. v. U.S.*, 671 F.3d 86, 92 (1 Cir., 2012)(quoting *Merlonghi v. United States,* 620 F.3d 50, 54 (1 Cir., 2010)).  The First Circuit has recently explained the principles at play in the well-pled complaint rule:

> In resolving a motion to dismiss, a court should employ a two-pronged approach. It should begin by identifying and disregarding statements in the complaint that merely offer legal conclusion[s]

6

couched as ... fact or [t]hreadbare recitals of the elements of a cause of action. A plaintiff is not entitled to proceed perforce by virtue of allegations that merely parrot the elements of the cause of action. Non-conclusory factual allegations in the complaint must then be treated as true, even if seemingly incredible. If that factual content, so taken, allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged, the claim has facial plausibility. The make-or-break standard ... is that the combined allegations, taken as true, must state a plausible, not a merely conceivable, case for relief.

Although evaluating the plausibility of a legal claim requires the reviewing court to draw on its judicial experience and common sense, the court may not disregard properly pled factual allegations, even if it strikes a savvy judge that actual proof of those facts is improbable. Nor may a court attempt to forecast a plaintiff's likelihood of success on the merits; a well-pleaded complaint may proceed even if ... a recovery is very remote and unlikely. The relevant inquiry focuses on the reasonableness of the inference of liability that the plaintiff is asking the court to draw from the facts alleged in the complaint.

*Ocasio-Hernandez v. Fortuno-Burset*, 640 F.3d 1, 12-13 (1 Cir., 2011)(internal citations, parentheticals and quotation marks omitted).

Further, the "court may also 'consider whatever evidence has been submitted, such as the depositions and exhibits submitted.'" *Merlonghi v. United States*, 620 F.3d 50, 54 (1 Cir., 2010)(quoting *Aversa v. United States,* 99 F.3d 1200, 1210 (1 Cir., 1996)); *Carroll v. U.S.*, 661 F.3d 87, 94 (1 Cir., 2011)("In evaluating a

motion to dismiss under Rule 12(b)(1) for lack of subject matter jurisdiction, we construe plaintiffs' complaint liberally and ordinarily may consider whatever evidence has been submitted, such as ... depositions and exhibits." (internal citation and quotation marks omitted)).   That being said, a plaintiff cannot assert a proper jurisdictional basis "merely on 'unsupported conclusions or interpretations of law.'" *Murphy,* 45 F.3d at 522 (quoting *Washington Legal Foundation v. Massachusetts Bar Foundation*, 993 F.2d 962, 971 (1 Cir., 1993); *Johansen*, 506 F.3d at 68.

## IV. Discussion

The Town has articulated two arguments in support of its contention that this Court lacks subject-matter jurisdiction over Berberian's Clean Water Act claim, the sole federal claim advanced in the complaint.   First, in the defendant's view, the allegations of the complaint address only wholly past violations of the Clean Water Act.   Second, the Massachusetts Department of Environmental Protection ("MassDEP") has already initiated, and is diligently prosecuting, an action against the Town under state law, i.e., Massachusetts General Laws chapter 21E and 310 C.M.R. 40.0000.   Each of these arguments shall be considered in turn.

## A.  Wholly Past Violations

The Clean Water Act provides that "any citizen may commence a civil action on his own behalf...against any person (including...any other governmental instrumentality or agency to the extent permitted by the eleventh amendment to the Constitution) who is alleged to be in violation of an...effluent standard or limitation under this chapter." 33 U.S.C. § 1365(a)(1).  There are, however, limits to this jurisdictional grant.  For instance, it is undisputed by the parties that the Clean Water Act "does not permit citizen suits for wholly past violations." *Gwaltney of Smithfield, Ltd. v. Chesapeake Bay Foundation, Inc.*, 484 U.S. 49, 64 (1987); #5 at 6;  #15 at 7.  "[T]he harm sought to be addressed by the citizen suit lies in the present or the future, not in the past." *Gwaltney*,  484 U.S. at 59.

The Town contends that Berberian's complaint deals only with the discharges related to the cleaning of the water tank on Bancroft Road that occurred over the course of three days in November, 2010.  Consequently, from the defendant's perspective, the plaintiff's claim involves strictly past violations that cannot be countenanced in a citizen's suit.

If the Town were correct in its factual assertions, its legal position would

have merit.[6]   However, the allegations of the complaint are not limited to the events of November, 2010. Berberian contends that "the [Bancroft Street water] tank overflow is tied into the catch basin system, routinely *discharging material* into waterways and protected wetlands resource areas on the Property.  This connection to the catch basin system is unpermitted."[7] (#1 ¶ 10 (emphasis added))  Further, the plaintiff alleges that the testing on his Property in April, 2011, more than five months after the November, 2010 water tank discharges and the Town's purported clean-up, "revealed high levels of iron and manganese." (#1 ¶ 25)  Lastly, in his affidavit, the plaintiff avers as follows:

> 4. Over the course of 12 years, I have seen many discharges from the catch basin system onto my Property which have migrated into the waterways of the Property.

---

[6]

The Town has established that the cleaning of the Bancroft Street water tank in November of 2010 was "routine" in the sense that it was undertaken in the normal course of events, i.e., "a planned, non-emergent event." (#6, Affidavit of Robert J. Douglas ¶ 5) It has also shown that the November 2010 cleaning "was the <u>first</u> time [the Town] had cleaned the Water Tank since, if at all, the early 1970s. [The Town] has not cleaned the Water Tank since November 2010." (#7, Affidavit of Christopher M. Cronin ¶ 5 (emphasis in original)) Lastly, "[a] discharge of sediment cannot be expected to occur in the future because the [Town] plans that future tank cleaning will be performed using tight tanks to receive any sediment and will not involve use of the storm water system." (#7, Affidavit of Christopher M. Cronin ¶ 10) In short, it is clear that the discrete discharges resulting from the November 2010 cleaning of the Bancroft Street water tank are a wholly past violation and would not alone support a citizen suit under the Clean Water Act. However, the plaintiff argues that the November 2010 discharges could be considered as part of a pattern of continuous or intermittent violation of the Clean Water Act.

[7]

At oral argument, counsel for the Town noted that these allegations were not included in the initial notice of claim given prior to the institution of this lawsuit. *See* 33 U.S.C. § 1365(b)(1)(A). Counsel also acknowledged, however, that this issue was not before the Court.

5. These discharges have occurred at times when the Town is conducting work at the town water supply tank on Bancroft street.

6. Further, it is my understanding that the tank overflow system ties into the catch basin system. When the tank is overfilled, sump pumps discharge the extra water to the catch basin system connecting to the Property.

7. Due to the tank overfills and associated sump pump discharges, thousands of gallons of water, *containing sediment*[8], are routinely discharged to the Property and to the waterways.[9]

8. Discharges to the Property, due to tank overfills, continue to date.

#15-1 Affidavit of James Berberian ¶¶ 4-8 (emphasis added).

The Supreme Court has held that "§ 505 [of the Clean Water Act] confers jurisdiction over citizen suits when the citizen-plaintiffs make a good-faith

---

[8]

The fact that tight tanks will be used in the future to receive sediment when the water tank is cleaned (#7, Affidavit of Christopher M. Cronin ¶ 10) does not appear to address the allegations concerning the routine discharge of water containing sediment through the sump pumps into the catch basin system.

[9]

Relying on the decision in *Bettis v. Town of Ontario, N.Y.*, 800 F. Supp. 1113, 1119 (W.D.N.Y., 1992), the Town argues that the overflow of water from the water tank is not actionable since water is not a pollutant. (#20 at 2) While that may be true, Berberian is alleging the routine discharge of water *containing sediment* through the sump pumps. Sediment is "matter that settles to the bottom of a liquid." Merriam-Webster Collegiate Dictionary (10th Ed.) (1993). In the regulations, a pollutant is broadly defined and includes, among other things, rocks and sand. *See* 40 C.F.R. § 122.2. Whether the plaintiff's allegation can be proven is another matter.

allegation of continuous or intermittent violation." *Gwaltney*, 484 U.S. at 64. Crediting the well-pled factual allegations of the complaint to the effect that 1) "the [Bancroft Street water] tank overflow is tied into the catch basin system [and] is routinely discharging material into waterways and protected wetlands resource areas on the Property"[10] (#1 ¶ 10); 2) that the connection between the tank overflow and the catch basin system is unpermitted (#1 ¶ 10); 3) that the levels of iron and manganese remained high more than five months after the water tank cleaning and clean-up effort (#1 ¶ 25); and 4) the averment in Berberian's affidavit that consequent to the tank overfills, thousands of gallons of water containing sediment have been, and continue to be, routinely discharged via sump pumps into the catch basin system on Bancroft Street, the plaintiff has met the Supreme Court standard of "a good-faith allegation of continuous or intermittent violation." *Gwaltney*, 484 U.S. at 64.

## B. Action Under Comparable State Law

The parties once again agree on the law:  A citizen suit under the Clear Water Act is barred when "a State has commenced and is diligently prosecuting an action under a State law comparable to" the administrative penalties

---

[10]

Berberian also attests that "[o]ver the course of 12 years, I have seen many discharges from the catch basin system onto my Property which have migrated into the waterways of the Property." (#15-1 ¶ 4)

subsection of 33 U.S.C. § 1319. *See* 33 U.S.C. § 1319 (g)(6)(A)(ii); *see also* 33 U.S.C. § 1365(a)(authorization to commence a citizen suit except as provided in § 1319(g)(6)).  As explained by the First Circuit, "[t]he primary function of the provision for citizen suits is to enable private parties to assist in enforcement efforts where Federal and State authorities appear unwilling to act." *North and South Rivers Watershed Ass'n, Inc. v. Town of Scituate,* 949 F.2d 552, 555 (1 Cir., 1991); *Gwaltney*, 484 U.S. at 60 ("The bar on citizen suits when governmental enforcement action is under way suggests that the citizen suit is meant to supplement rather than to supplant governmental action.").

The MassDEP has already commenced and is prosecuting an action against the Town for the discharges that occurred in November of 2010.  In this case the MassDEP is proceeding under Mass. Gen. L. c. 21E and 310 C.M.R. 40.0000:

> MassDEP has investigated the potential source of the hazardous materials [released] and required that the Town of Andover perform additional testing associated with the sediments in a water storage tank on Bancroft Road.  Based on those results and other information, MassDEP has reason to believe that the subject property or portions(s) thereof is a disposal site as defined in the Massachusetts Oil and Hazardous Material Release Prevention and Response Act, M.G.L. c. 21E, and the Massachusetts Contingency Plan, 310

> CMR 40.0000 (the MCP). The assessment and cleanup
> of disposal sites is governed by M.G.L. c. 21E and the
> MCP.

#7-1 at 1.

The sticking point for the parties is whether that action is being taken under a state law comparable to the Clean Water Act. The Court, however, shall not reach that issue.

The First Circuit has written that:

> The focus of the statutory bar to citizen's suits is not on
> state statutory construction, but on whether corrective
> action already taken and diligently pursued by the
> government seeks to remedy the same violations as
> duplicative civilian action. DEP is already acting to
> correct the violations upon which Appellants focus
> their action. Duplicative enforcement actions add little
> or nothing to compliance actions already underway,
> but do divert State resources away from remedying
> violations in order to focus on the duplicative effort.

*North and South Rivers*, 949 F.2d at 556.

In this case, the MassDEP action is specifically addressing the releases or discharges that occurred from November 10th through 12th, 2010 when the Bancroft Street water supply tank was being cleaned. (*See* #7-1 at 2 ("MassDEP has determined that IRAs [Immediate Response Acts] are necessary at the

referenced site to address a condition that Could Pose an Imminent Hazard due to the presence of up to 143.00 mg/kg of arsenic in wetlands surface soil. Contaminated sediment was deposited in the wetlands as a result of cleanout activities associated with the 6 million gallon Bancroft Road water storage tank in November 2010."); #8-1 at 1 ("The Licensed Site Professional for the site...submitted the IRA Plan on your [the Town's] behalf in response to the release of contaminated sediment from the Bancroft Road water tank to the environment. This release is reported to have occurred in November of 2010."); #10-1 at 1 ("In November 2011, a Notice of Responsibility (NOR) was issued to the Town of Andover by the MassDEP based on the belief that a release of sediments from a Town-owned drinking water storage tank on Bancroft Road in November 2010 was a potential source of the hazardous materials in the wetlands.").

There is nothing in the papers submitted on this motion to suggest that any action has been taken on Berberian's allegations regarding the unpermitted connection between the tank overflow and the catch basin or the routine discharge of material and sediment through this unpermitted connection into the waterways and protected resource areas on the Property. Thus, unlike the

situation in *North and South Rivers*, 949 F.2d at 554, where the "[a]ppellant's charges were based on the same discharge violations as the State's Order," at least in part Berberian's claim is premised on alleged facts, i.e., the unpermitted connection and ongoing discharges, distinct from those that occurred in November 2010.   In other words, Berberian's lawsuit is not duplicative of the State's efforts.   On this basis alone, the Town's argument that the State has already commenced and is diligently prosecuting an action under comparable state law so as to foreclose a citizen's suit must fail.

### V. Conclusion and Order

The Court need go no further.   The allegations are sufficient to state a claim under the Clean Water Act.   Whether the claim will be found to have merit when all the evidence has been adduced and the Court has considered the matter on a summary judgment motion is another question.   It is ORDERED that the Town Of Andover's Motion To Dismiss For Lack Of Subject-Matter Jurisdiction (#4) be, and the same hereby is, DENIED.   A Scheduling Order shall issue.

/s/ Robert B. Collings

16

ROBERT B. COLLINGS

United States Magistrate Judge

May 21, 2012.